## MINGUS et al. v. OLSSON et al.

No. 7106.   Decided January 8, 1949.   (201 P. 2d 495.)

See 25 C. J. S., Death, sec. 80; 5 Am. Jur. 664. Contributory negligence of pedestrian at street crossing, note, 96 A. L. R. 786.

*Golden W. Robbins*, of Salt Lake City, for appellants.

*Roberts & Roberts*, of Salt Lake City, for respondents.

WOLFE, Justice.

Appeal by the plaintiffs from a directed verdict and judgment for defendant in an action by plaintiffs against defendant for the wrongful death of Glen H. Mingus, father of the plaintiffs.

The deceased sustained fatal injuries when struck by an automobile driven by defendant Olsson as he (decedent) attempted to cross Thirteenth East Street at or near its intersection with Westminster Avenue in Salt Lake City, at about 8:15 p. m. on the evening of February 23, 1945. This action was commenced by the surviving children of decedent, all but one of them being minors and acting by their guardian ad litem, Hazel Mingus, former wife of decedent and mother of plaintiffs. Venice Mingus, wife of decedent at the time of his death, was originally a party plaintiff, but it appears that she refused to cooperate in prosecution of the action and was dropped as a party plaintiff and by appropriate motion and amendments to the pleadings was joined as a party defendant. She was subsequently defaulted, and took no part in the trial of the cause, except as a witness. She is not involved in this ap-

peal and the word "defendant" as used in this opinion shall be understood to refer to Earnest G. Olsson, the driver of the automobile involved in the fatal accident.

Thirteenth East Street runs north and south and is intersected at right angles by Westminster Avenue, which runs east and west. There was an arc light on the southwest corner of the intersection, and there was also a large tree which threw a shadow onto the highway. On the south side of the intersection there was an unmarked pedestrian crosswalk across Thirteenth East Street. Thirteenth East Street is 42 feet wide from curb to curb. It is a paved street.

At the time of the accident it was dark, but the road was dry, and the weather was clear. The arc light on the corner was burning.

Just prior to the time of the accident, decedent and his wife, Venice Mingus, were walking arm-in-arm easterly on the sidewalk along the south side of Westminster Avenue. They were starting out to do some home missionary work for the Latter-Day Saints Church, and decided to make their first call at a home on the east side of Thirteenth East Street, about a half-block south of the intersection with Westminster Avenue. While attempting to cross Thirteenth East Street, they were struck by a southbound automobile driven by defendant, and from the effect of the injuries thereby sustained, decedent subsequently died.

Police officers who investigated the accident found the body of decedent at a point in Thirteenth East Street 23 feet south of the south line of the unmarked crosswalk,

and 18 feet east of the west curb line, or in other words, about 3 feet west of the center line of Thirteenth East Street.

At the trial of the case, after both parties had rested, the court granted defendant's motion for a directed verdict on the grounds that the evidence showed that: as a matter of law, plaintiffs' decedent was guilty of contributory negligence. Plaintiffs' motion for new trial was denied, and plaintiffs prosecute this appeal. The first question for our determination is whether or not the evidence establishes, as a matter of law, contributory negligence on the part of the decedent. In determining this question, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the plaintiffs.

At the trial, defendant contended that deceased was not in the crosswalk, but at a point somewhat south of it at

the time he was struck, and further contended that decedent failed to look for vehicular traffic on Thirteenth East Street.

As to whether or not decedent was within the crosswalk at the time of the collision, there is a conflict in the evidence. For purposes of this appeal, we must assume that deceased was in the cross-walk at the time he was struck. The crucial question is whether decedent failed to keep a proper lookout for approaching traffic.

Mrs. Venice Mingus, decedent's wife who was with him at the time of the accident, testified that as they stepped off the curb and started easterly across Thirteenth East Street, decedent was to her left or north; that he looked neither to his left nor right, but looked straight ahead as they proceeded across the street; that he said nothing to her about approaching traffic; that she did not see or hear defendant's automobile until it struck; and that they had proceeded about a quarter of the way (about 10 feet) across the street when they were struck.

Defendant testified that deceased and his wife were about 5 or 6 feet into the street when he first observed them; that they were then about 10 feet away from him; that he swerved his vehicle to the left and applied his brakes, but that he was unable to avoid striking them.

Mrs. Olsson, defendant's wife, who was a passenger in defendant's automobile at the time of the accident, testified that when she first saw deceased and his wife they were walking in a southeasterly direction, and that she could see deceased's back.

Lois Olsson, defendant's daughter, who was also a passenger in his automobile at the time of the accident, corroborated the testimony of her parents.

In connection with the above testimony, it should be noted that the crosswalk did not run due east and west, but

slightly southeasterly and northwesterly, so that if deceased were walking within and parallel to the unmarked lines of the crosswalk, and were facing straight ahead in his course, his face would be turned slightly away and his back slightly toward the traffic approaching from the north.

Plaintiff relies on an asserted presumption that deceased was, at the time of his injury, in the exercise of due care for his own safety. It is true that in certain death cases, there is a presumption that decedent was in the exercise of due care for his own safety. But there is no room for such a presumption where, as here, there was positive evidence not only as to the fatal accident itself, but to the conduct of decedent leading up to the fatal accident. Such a presumption must give way to the positive evidence adduced.

We must determine then, from the evidence and all the fair inferences therefrom, whether reasonable men must conclude that deceased was guilty of contributory negligence at the time he was struck by defendant's automobile. The testimony of Venice Mingus was to the effect that she knew that decedent did not look before stepping off the curb onto the street. She admitted that, in her deposition, taken several months before the trial, she had testified that she did not know whether or not decedent had looked before stepping off the curb, but at another point in that deposition she had stated that he was looking straight ahead at the time he stepped off the curb.

More convincing than the direct testimony that deceased did not look, is the further evidence that deceased neither said nor did anything to indicate that he was at all aware of the danger presented by defendant's approaching automobile. He seems to have been wholly unaware of its approach. Certainly he did nothing either to warn his wife, nor to rescue either himself or her from their position of peril. On this evidence, it must be said as a

matter of law that deceased either failed to look, or having looked, failed to see what he should have seen.

There can be no doubt that a pedestrian who undertakes to cross a busy street of a large city, without first observing for vehicular traffic is guilty of contributory negligence. And this is true, even though he may be crossing in a crosswalk, and have the right of way. In the recent case of *Hickok* v. *Skinner*, 113 Utah 1, 190 P. 2d 514, this court held that a motorist who had the right of way across an intersection, nevertheless had a duty to observe for traffic as he proceeded across the intersection. The rights of pedestrians to the use of the public streets are the same as those of motorists—neither greater nor less. Hence, the same general duties devolve upon them. A pedestrian crossing a public street in a crosswalk or pedestrian lane, although he may have the right of way over vehicular traffic, nonetheless has the duty to observe for such traffic. Clearly, decedent neglected that duty in this case. It follows that he was contributorily negligent as a matter of law. Of course we do not mean to imply that a mere glance in the direction of the approaching automobile would suffice. The duty to look has inherent in it the duty to see what is there to be seen, and to pay heed to it.

It has been suggested, but not urged, that the negligence of deceased should not be imputed to his heirs. In the recent case of *Van Wagoner* v. *Union Pac. R. Co.*, 112 Utah 189, 186 P. 2d 293, on rehearing, 112 Utah 218, 189 P. 2d 701, we held that contributory negligence of deceased was available to the defendant as a defense in an action by the heirs for wrongful death.

The judgment is affirmed. Costs to respondents.

We concur:

PRATT, C. J., and LATIMER, J., concur.

WADE, Justice (concurring in the result).

I concur with the result and generally with the reasoning in the prevailing opinion. I agree that under the evidence

here, decedent was guilty of contributory negligence as a matter of law, because the evidence shows that he walked directly into the course of an approaching automobile without taking any precaution to prevent being struck thereby, since the automobile had its headlights lighted so that he could have seen it approaching and waited in a place of safety and thereby avoided the accident. Even had decedent looked to see if there was an automobile approaching, this would not have exonerated him from negligence. As long as he walked directly into the course of any approaching automobile without taking any precaution for his safety, it would make no difference whether he looked or failed to look for approaching traffic. If he looked and inattentively failed to see the approaching car or absentmindedly failed to realize his danger, or he realized his danger but still continued on into the course of the car, he would be in the same situation as to contributory negligence as though he failed to look at all. Of course, if there was a complete absence of evidence as to whether he took any precautions to avoid the accident, then the law creates a presumption that he took reasonable precautions for his own safety and that he was injured in spite of such precautions. But here there was evidence from which the jury could reasonably find that he took no precautions for his own safety and on the production of such evidence the presumption disappears from the case and the question must be determined from the evidence. Of course, the facts on which the presumption is based are still in evidence and if they have a logical tendency to prove that the decedent used reasonable care for his own safety, they may be considered in determining the question. See my concurring opinion in *Pilcher* v. *Pilcher*, 114 Utah 72, 197 P. 2d 143, and authorities therein cited. However, in determining this question, we must view the evidence most favorable to the plaintiffs. Since the evidence is not sufficient from which it could be reasonably found that decedent used reasonable care for his own safety he was therefore, as a matter of law, guilty of contributory negligence.

As I view the facts, the only serious problem presented in this case is under the last clear chance doctrine, which problem is not discussed in the prevailing opinion. Since this is a directed verdict it must be reversed if the evidence will sustain a finding of facts sufficient to support a judgment in plaintiffs' favor. We must therefore analyze and view the evidence most favorable to plaintiffs and see if it will sustain a finding of facts which will support a judgment in their favor.

In my opinion the evidence would sustain a finding that decedent was as far as 19 feet east from the west curb line of 13th East Street when he was struck by defendant's car. His body came to rest 18 feet east of that curb line, from the wiping marks on the west or right-hand side of the front part of defendant's car and the fact that the right windshield glass was broken from the impact with decedent's body, it is clear that decedent was in front of the right-front fender when he was struck and that his body was carried by the force of the impact over the top of the right or west front fender and struck the windshield and then slid off the west side of the car onto the pavement. This being true, the place where the body came to rest, if the car travelled parallel with the west curb line of 13th East Street, would be several feet west of the place where decedent was struck. Twenty-three feet north of where the body came to rest and 19 feet east of the west curb line of 13th East Street, and approximately on the south side of the extended sidewalk lines of Westminster Avenue across 13th East Street, the evidence shows that there was a fresh brush or scrape mark on the pavement which appeared to have been made by scraping a shoe thereon. Even if defendant's car did as he testified—veer to the east as it struck decedent—this testimony is consistent therewith, and the jury could reasonably believe that this mark was made by the scraping of decedent's shoe on the pavement at the time he was hit.

If deceased was walking at a rate of speed slightly less than three miles per hour in going the 19 feet from the west

curb line to the place where he was struck, and defendant's car was travelling 20 miles per hour, then the car was travelling 7 times as fast as decedent was walking and was 133 feet from the place of impact when decedent stepped from the curb into the street. Defendant's testimony was that he was travelling 20 miles per hour as he crossed the intersection but had been travelling faster prior thereto, so he would be farther away than that if that was the case. If he were travelling faster than the assumed rate, he would be farther away but would have less control over his car. I have taken 3 miles per hour to illustrate decedent's rate of speed, probably the ordinary walking rate of speed under the circumstances here described would be considerably slower than that, which would give defendant more time to avoid the accident. In any event, the rates taken would give defendant almost 5 seconds after decedent stepped from the curb to the time of impact. The evidence is clear that during all that time, had he looked, defendant could have seen the decedent, could have observed that he was not looking one way or the other, and that he did not hesitate at any time from the time he reached the edge of the curb to the time he was struck. Decedent was directly under a street light and defendant's headlights were lighted and there is no evidence that there was anything to interfere with his vision.

If defendant did see the decedent as he walked those 19 feet from the curb to the place of impact, in my opinion, it is clear such facts would sustain recovery. Sec. 480, of Restatement of the Law, Torts, which has been relied upon many times recently by this court, provides:

"Last Clear Chance; Negligently Inattentive Plaintiff.

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant

"(a) *knew of the plaintiff's situation,*

"(b) *and realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and*

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff." (Italics ours.)

In my opinion assuming that the defendant saw decedent as he walked from the curb to the place of impact, under the circumstances here existing, all of the requirements of that section are fully met and thereunder it would be a jury case. If defendant saw decedent during all that time he clearly knew of his situation. Certainly if a driver of a vehicle on the street saw a man and woman walking arm in arm, and without hesitating or looking from one side to the other, they stepped from the curb into the street and continued without hesitation or without looking from one side to the other to cross the street, such a driver would have reason to realize that they were oblivious of the approaching car and were therefore in peril. It would be hard to find a situation which would more clearly indicate that the pedestrians were oblivious of their danger than this. If defendant was 133 feet away when they stepped from the curb into the street and travelling only 20 miles per hour, he would have ample time to sound his horn and stop in time to avoid the accident. Thus under these circumstances, I think it would be a jury case.

Under the above quoted section subdivision (a) the defendant must know of decedent's situation, it is not enough that he could have discovered decedent's situation, had he exercised ordinary vigilance. So unless from the evidence it could be reasonably found that defendant saw decedent during that time, then under this rule plaintiffs cannot recover. Defendant testified that he did not see the decedent until he was within 10 feet. The surrounding circumstances tend to corroborate that testimony. There was no evidence of tire marks on the pavement, nor of making a sharp curve, or that he sounded his horn, prior to the time defendant claimed that he saw the deceased. All of these circumstances tend to show that defendant just did not see decedent or his

wife in time to do anything about it. I therefore think that it would be unreasonable to find that defendant saw decedent as he stepped from the curb into the street and until he was run down thereafter. If this is correct, then under the rule above quoted from Restatement of the Law, plaintiffs cannot recover. I therefore agree with the result reached in the prevailing opinion.

But there are cases where we have held that a defendant is liable under the last clear chance doctrine, where he negligently fails to discover the injured person's situation in time to avoid the accident. See *Knudsen* v. *Oregon Short Line Ry. Co.*, 78 Utah 145, 2 P. 2d 102; *Palmer* v. *Oregon Short Line Ry. Co.*, 34 Utah 466, 98 P. 689, 16 Ann. Cas. 229; *Teakle* v. *San Pedro Ry. Co.*, 32 Utah 279, 90 P. 402 10 L. R. A., N. S., 486. In those cases the injured person had negligently placed it beyond his power to extricate himself from his peril, in such cases we held that where the defendant negligently failed to learn of the injured person's condition in time to avoid the accident, he was liable. In two of those cases, a child had gone to sleep on the railroad track, and the other one a licensee was caught by a passing train and the employees of the company saw his condition but could not get word to the engineer who was operating the train in time to prevent injury. Those cases come under Sec. 479, Restatement of the Law of Torts, where the law is stated in that kind of a case in harmony with those decisions.

In the present case, both the defendant and the decedent were guilty of the same kind of negligence. Each negligently failed to observe the approach of the other. The negligence of each continued to the time of the accident and either of them could have avoided the accident within a very short time prior to the impact had he observed the approach of the other. There does not appear to be any good reason why the last clear chance doctrine should allow a recovery under such circumstances. Of course, the case would be entirely different had the defendant seen the situation of the decedent and then failed to do anything to avoid the accident.

McDONOUGH, J., concurs in the result.